J-A16005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.R., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.T., | |
| Appellee | No. 60 WDA 2017 |

Appeal from the Order Dated December 21, 2016
In the Court of Common Pleas of Allegheny County
Family Court, at No(s): FD 07-003697-004

BEFORE:    STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:              **FILED AUGUST 28, 2017**

In his tenth appeal, J.R. (Father) appeals from the order of December 21, 2016,[1] which enforced the legal custody provisions of the parties' March 24, 2015 custody order. We affirm and remand for a determination of counsel fees to be awarded to Mother.

_____

[1] There are actually two orders at issue in this appeal. As explained by the trial court:

> The reason there are two orders is because each party submitted a proposed order with their respective motion. For housekeeping purposes, [the trial court] typically will deny one proposed order in full with the direction to "see order of same date." The [trial court] will then use the second proposed order as the template for its ultimate decision. Here, the [trial court] mistakenly abandoned this good practice in the haste of the motions argument … [.]

Trial Court Opinion, 2/8/2017, at fn. 1.

_____

* Retired Senior Judge assigned to the Superior Court.

The trial court summarized the protracted history of this case as follows.

[Father and L.T. (Mother)] are parents to a nine-year-old son [J.R. Jr., born April 2007 (Child)]. The history of this custody case is the history of Father's very litigious conduct. Litigation greatly increased after March 2015, when after a custody hearing, [the trial court] awarded Mother the sole legal custody authority to make medical and educational decisions on behalf of [Child]. Father was named the sole legal custodian on matters pertaining to [Child's] optical, dental and orthodontic needs.

The driving force behind [the trial court's] division of legal custody was Father's record of animosity on this case. In its decision, which has long since been affirmed by [this Court, the trial court] noted instances of Father's hostility and inability to communicate or cooperate with Mother. This behavior, which the [trial court] described then as stalking, was so egregious that it was — and still is — in [Child's] best interests if the custody order separated the co-parenting as much as possible. The physical schedule was ordered to be week on week off. The parties need not [obtain] the other's prior approval to enroll the child in extracurriculars. And the legal decisions were divided such that the respective parent was put in exclusive charge of certain domains.

Among the reasons for this custody scheme was [the trial court's] desire to make the custody order "as simple as possible, as clear-cut as possible," an expression that soon became Father's favorite chapter and verse as he has routinely quoted it back to the [trial court] in virtually all motions' arguments and in nearly every one of Father's petitions.

The genesis of the instant appeal was Mother's discovery that Father had been taking [Child] to see a therapist, and that he had done so for 18 months, unilaterally, and in violation of the custody order. Father had told Mother that he wanted to take [Child] to a therapist in June 2015. Mother was against individualized therapy from the onset, but she had told Father she would reconsider her position if [Child] was first reevaluated by the cognitive psychologist who had previously determined that [Child] was too young for individualized therapy. It was Mother's apparent understanding that [Child] did not receive individualized therapy as the parents never made arrangements

- 2 -

to have [Child] reevaluated. Father contends that Mother knew and thus implicitly consented. Fast forward 18 months later, when in December 2016 Mother inadvertently received a $100 bill for [Child's] psychological services and learned that Father had gone against both Mother's wishes and the [c]ustody [o]rder and enrolled [Child] in therapy anyway. Mother immediately brought the subject [petition for enforcement and special relief] seeking to end this practice as well as recoup the $100 copay.

At the motions' argument, Mother articulated her reasons against individualized therapy, citing the previous evaluation that [Child] was too young. However, Mother was amicable to therapy if it was conducted in a family setting. Father could not articulate any of his reasons. Instead, he became so disruptive and hostile to both [the trial court] and opposing counsel, even after warnings from both [the court] and the deputy present in the room, that [the trial court] was forced to discontinue the motions' argument and issue a ruling.

The ruling interpreted and enforced Paragraph 4 of the March 24, 2015 Custody Order which provides: "All decisions involving legal custody shall be shared with the exception of the following: [list omitted]." Absent from this list was any mention of mental health services. Thus, mental health issues would be one of the few matters where the parents would need to be in agreement before one parent took any action. At the motions' argument, the [trial court] was prepared to enforce Paragraph 4, which would effectively prohibit Father from taking [Child] to individualized therapy absent Mother's consent. However, despite Father's disruption, Mother was able to articulate that she would not be opposed [Child's] enrollment in therapy so long as it was conducted in a family setting. As such, [the trial court] ordered that Paragraph 4 continues to require mutual consent for mental health issues, save for family-style therapy, where Father can enroll [Child]. The [trial court] further ordered that [Child's] mental health records shall be accessible by both parents, just like [Child's] medical records, optical records, etc.[, and that Father pay the $100 copay Mother had received for Child's therapy].

Trial Court Opinion, 2/8/2017, at 1-4.

Father timely filed a notice of appeal, and complied with the trial court's order directing him to file a concise statement of matters complained of on appeal. The trial court filed its opinion on February 8, 2017.

Father states the following inartfully phrased questions for our review.

1. Did the trial court err committing an abuse of discretion and/or an error of the law by, *inter alia*, modifying the custody order, notwithstanding its failure to conduct a modification hearing?

2. In regard to [] Mother's access to [Child's] records with CDTA, did the trial court err by even addressing the proposal to Paragraph 4(g) of the March 24, 2015 custody order of court [which] clearly grants both parties access to ALL records regarding [Child]. Mother already having access to the records makes the need to for it to be address[ed] null; since [] Mother does not have and never has had any legal or permitted access to [] Father's records and therefore has no place in being addressed?

3. Did the trial court err by ignoring the duty set before it to ensure the best interest of [Child] comes before all else by forbidding [Child] to continue receiving services with the therapist he has grown familiar with over the period of eighteen months?

4. In her continued abuse of discretion, general bias, and incompetence, did the trial court err when order [] Father to pay the $100[.00] balance to CDTA? This err/question is two-fold;

   a. [] Mother addresses the request to the [trial court] in a matter that deems it necessary due to [] Father's non-compliance with the custody order of court, which is untrue.

   b. The trial court's refusal to speak to [] Father's response and new matter which clearly addressed two key elements in support of his argument;

- 4 -

i.  The trial court's custody order, including the same trial court's words to both parties after having read it aloud on March 24, 2016

ii. [] Mother's false and misleading statements within her original petition.

Father's Brief at 2-3 (unnecessary capitalization omitted).

"We review an order disposing of a petition for special relief under an abuse of discretion standard of review." **Kulp v. Kulp**, 920 A.2d 867, 870 (Pa. Super. 2007). "An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality." **Simmons v. Simmons**, 723 A.2d 221, 222 (Pa. Super. 1998).

Following our review of the certified record, the briefs for the parties, and the relevant law, we conclude that the opinion of the Honorable Kathryn M. Hens-Greco correctly addresses and disposes of Father's issues and supporting arguments. Specifically, the trial court found: (1) it did not modify the existing custody order without a hearing, it only enforced paragraph 4 of the parties' agreement, which set forth that Mother and

Father share legal custody as it pertains to the mental health of Child,[2] and furthermore, it did not amend or supplement the custody order, but merely clarified that Mother would not oppose Father enrolling Child into family therapy; (2) it did not err in reaffirming what the custody order already allowed for, equal access to both parents to Child's medical records, which the court relayed at the motions hearing, included Child's mental health records; (3) it did not err in enforcing the custody order, and thus forbidding Father from continuing to take Child to individualized therapy; (4) it did not err in ordering Father to pay the copay incurred from Child attending therapy; and (5) Father's claims that the trial court is incompetent and biased are meritless. Trial Court Opinion, 2/8/2017, at 5-10.

We agree with the trial court's reasoning and conclusions. Accordingly, we adopt the trial court's February 8, 2017 opinion as our own, and affirm the trial court's disposition of Father's issues on the bases of this

---

[2] In agreeing with the trial court, we reject Father's argument that because the custody order did not clearly state that Mother's permission must be obtained before enrolling the Child in therapy, the trial court's holding that Mother's permission **was** necessary amounted to a modification of the order. It is clear that order specified that all legal custody issues, with the exception of a few specific issues, were to be **shared**. Thus, Father was on notice that Mother must share in the decision-making as it pertains to enrolling Child in therapy.

opinion.[3] The parties shall attach a copy of the trial court's opinion to this memorandum in the event of further proceedings.

Lastly, we address Mother's request for counsel fees based upon Father's "vexatious and frivolous behavior," in which Mother avers that in addition to Father's various filings in the trial court and this Court, which are based upon "fruitless claims," Father has engaged in harassing behavior, including name-calling. Mother's Brief at 16-20.

> Under Pa.R.A.P. 2744, an appellate court may award counsel fees and other damages when it determines that "an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." An appeal is "frivolous" if the appellate court determines that the appeal lacks any basis in law or in fact.

*Lundy v. Manchel*, 865 A.2d 850, 857 (Pa. Super. 2004) (some citations omitted). "[A]n appellate court may award as further costs damages as may be just … if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule." Pa.R.A.P. 2744.

---

[3] We recognize that the opinion at two places on page one refers to December 2017 when it obviously meant December 2016.

Upon review, we agree with Mother that Father's conduct both immediately preceding this appeal and during the appeal has been obstreperous and vexatious. We note with displeasure that this is Father's tenth appeal since March 2015, and reiterate, as we have found in the past, that "Father's appeals are frivolous, dilatory, obdurate, and vexatious and his abuse of the legal process is unwarranted." *J.R. v. L.T*, 161 A.3d 383 (Pa. Super. 2017) (unpublished memorandum).

Accordingly, we grant Mother's request for counsel fees and remand this matter to the trial court for calculation of reasonable counsel fees.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2017

# Allegheny County - Department of Court Records
## Civil Division - Filings Information

**County caseID:FD-07-003697**
**Case Description:Thompson vs Rehak 004**
**Official Docket Entry, Sort By Document Number Ascending**

| Document Number | Filed Date | Title/Entry | Entry Classification | Filed By |
|---|---|---|---|---|
| 1 | 02/08/2017 | Opinion | Official Docket Entry | Kathryn MHens-Greco |

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

J. R.,

         Plaintiff,      :    OPINION

    v.               :    No.: FD-07-003697-004
                      60 WDA 2017

L. T.,

        Defendant.   :

                    BY:

Honorable Kathryn Hens-Greco
440 Ross Street
Suite 5077
Pittsburgh, PA 15219

COPIES TO:

*Pro Se* Plaintiff:

J. R., Sr.
246 Republic Street
Pittsburgh, PA 15211

Counsel for Defendant:

Margaret Wei Prescott, Esq.
Women's Center & Shelter of
Greater Pittsburgh
Civil Law Project
P.O. Box 3742
Pittsburgh, PA 15230

FILED
17 FEB -8 PM 3: 55
DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION PA
ALLEGHENY COUNTY

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

J. R.,

                Plaintiff,           :        No.: FD-07-003697-004
                                            :        60 WDA 2017

        v.

L. T.,

                Defendant.       :

## OPINION

HENS-GRECO, J.                                        February 8, 2017

In this, his tenth appeal, Plaintiff J.R. ("Father"), *pro se*, appeals this Court's Orders[1] of

December 21, 2017, which enforced the legal custody provisions of the parties' Custody Order

of March 24, 2015, and specified that Father does not have the authority to unilaterally enroll the

parties' nine-year-old son in any individualized mental health therapy. The December 2017

Orders permitted, however, that Father may enroll the child in family therapy after Defendant

L.T. ("Mother") represented that she would not contest therapy if done in a family setting.

---

[1] The reason there are two orders is because each party submitted a proposed order with their respective motion. For housekeeping purposes, this Court typically will deny one proposed order in full with the direction to "see order of same date." The Court will then use the second proposed order as the template for its ultimate decision. Here, the Court mistakenly abandoned this good practice in the haste of the motions argument, some of which will be retold below.

In any event, as it stands, one order – the order that was attached to Father's pleading – largely strikes through all of Father's requested relief. It only leaves the first two paragraphs; the second paragraph is the substantive order: "[Father] may continue to take the child to receive psychological services if it is family therapy." The first paragraph reads: "[Mother's] Petition is DENIED," but this sentence should also have been stricken through as the Court used the proposed order attached to Mother's petition as its template.

The other order – the order that was attached to Mother's petition and the one the Court used as its template – also specifies that Father may continue to take the child to receive psychological services if it is family therapy. This order is far more substantive as it addresses, for example, issues of co-pays and medical records.

Both of these orders hit the docket – albeit one before and one after the December holidays – and so both are to be observed.

1

## I.   RELEVANT FACTUAL AND PROCEDURAL HISTORY

The parties are parents to a nine-year-old son. The history of this custody case is the history of Father's very litigious conduct. Litigation greatly increased after March 2015, when after a custody hearing, this Court awarded Mother the sole legal custody authority to make medical and educational decisions on behalf of the child. Father was named the sole legal custodian on matters pertaining to the child's optical, dental and orthodontic needs. *See* Order of Court, dated March 24, 2015, at Paragraph 4.

The driving force behind this Court's division of legal custody was Father's record of animosity on this case. *See* Trial Court Opinion, 495 WDA 2015, dated May 29, 2015, at 8-14; *see also Bernard v. Green*, 602 A.2d 1380, 1381 (Pa. Super. 1990) (quoting *In re Wesley J.K.* 445 A.2d 1243, 1249 (Pa. Super. 1982). In its decision, which has long since been affirmed by the Superior Court, this Court noted instances of Father's hostility and inability to communicate or cooperate with Mother. This behavior, which the Court described then as stalking, was so egregious that it was – and still is – in the child's best interests if the custody order separated the co-parenting as much as possible. The physical schedule was ordered to be week on week off. The parties need not the other's prior approval to enroll the child in extracurriculars. And the legal decisions were divided such that the respective parent was put in exclusive charge of certain domains. *See* Custody Order of Court, dated March 24, 2015.

Among the reasons for this custody scheme was this Court's desire to make the custody order "as simple as possible, as clear-cut as possible," an expression that soon became Father's favorite chapter and verse as he has routinely quoted it back to the Court in virtually all motions' arguments and in nearly every one of Father's petitions. *See* Transcript of Testimony ("T.T."), dated December 21, 2016, at 4.

2

The genesis of the instant appeal was Mother's discovery that Father had been taking the child to see a therapist and that he had done so for 18 months, unilaterally, and in violation of the custody order. *See* Mother's Petition for Enforcement and Special Relief, dated December 21, 2016. Father had told Mother that he wanted to take the child to a therapist in June 2015. Mother was against individualized therapy from the onset, but she had told Father she would reconsider her position if the child was first reevaluated by the cognitive psychologist who had previously determined that the child was too young for individualized therapy. *See* T.T., at 2-3; *see also* Mother's Petition for Enforcement, at Exhibit B. It was Mother's apparent understanding that the child did not receive individualized therapy as the parents never made arrangements to have the child reevaluated. Father contends that Mother knew and thus implicitly consented. Fast forward 18 months later, when in December 2016 Mother inadvertently received a $100 bill for the child's psychological services and learned that Father had gone against both Mother's wishes and the Custody Order and enrolled the child in therapy anyway. Mother immediately brought the subject petition seeking to end this practice as well as recoup the $100 copay.

At the motions' argument, Mother articulated her reasons against individualized therapy, citing the previous evaluation that the child was too young. However, Mother was amicable to therapy if it was conducted in a family setting. Father could not articulate any of his reasons. Instead, he became so disruptive and hostile to both this Court and opposing counsel, even after warnings from both this Court and the deputy present in the room, that this Court was forced to discontinue the motions' argument and issue a ruling. *See* T.T., at 8-13, *see generally* 1-13.

The ruling interpreted and enforced Paragraph 4 of the March 24, 2015 Custody Order, which provides: "All decisions involving legal custody shall be shared with the exception of the

3

following: [list omitted]." Absent from this list was any mention of mental health services. Thus, mental health issues would be one of the few matters where the parents would need to be in agreement before one parent took any action. At the motions' argument, the Court was prepared to enforce Paragraph 4, which would effectively prohibit Father from taking the child to individualized therapy absent Mother's consent. However, despite Father's disruption, Mother was able to articulate that she would not be opposed the child's enrollment in therapy so long as it was conducted in a family setting. As such, this Court ordered that Paragraph 4 continues to require mutual consent for mental health issues, save for family-style therapy, where Father can enroll the child. The Court further ordered that the child's mental health records shall be accessible by both parents, just like the child's medical records, optical records, etc. Father appeals.

## II. DISCUSSION

In his timely-filed[2] "Concise Statement of Errors Complained of on Appeal," Father alleges, verbatim:

1. The Trial Court erred committing an abuse of discretion and/or an error of the law by, inter alia, modifying the custody order, notwithstanding its failure to conduct a modification hearing.

2. In regard to Mother's access to the child's records with CDTA, the Trial Court erred by even addressing the proposal as Paragraph 4(g) of the March 14, 2015 Custody Order of Court as it clearly grants both parties access to all records regarding the child. Mother [already] having access to the records makes the need for it to be address[ed] null. The Mother does not have and never has had any legal or permitted access to the Father's records[,] and therefore has no place in being addressed [sic].

3. The Trial Court erred by ignoring the duty set before it to ensure the best interest of the child comes before all else by forbidding the child to continue receiving services with the therapist he has grown familiar with over the period of eighteen months.

---

[2] albeit not concurrently-filed

4

4. In her continued abuse of discretion, general bias, and incompetence, the Trial Court erred when ordering the Father to pay the $100 balance to CDTA. This err[or] is two-fold[:]
    a. The Mother addresses the request to the Court in a matter that deems it necessary due to the Father's non-compliance with the Custody Order of Court, which is untrue.
    b. The Trial Court's refusal to speak to the Father's Response and New Matters which clearly addressed two key elements in support of this argument[:]
        i. The Trial Court's Custody Order, including the same Trial Court's words to both parties after having read it aloud on March 24, 2016.
        ii. The Mother's false and misleading statements within her original Petition.

The Court addresses these statements in order.

## A. Modification

Father is generally correct that a custody modification without a custody hearing would be erroneous. However, the Court sets forth a couple reasons why Father's contentions are unfounded. For one thing, the subject order merely enforced Paragraph 4 of the parties' Custody Order. This was no substantial change in custody. The parties entered and exited the Court with unchanged rights and responsibilities regarding mental health issues, namely that they must reach a consensus before taking any action regarding mental health therapy. The only expansion – if that is even the right term – of Paragraph 4 is that Mother, out of her indifference or magnanimity, represented to the Court that she would not contest Father's decision to engage in family therapy with the child. Thus, the December 21, 2016 Order merely states that Mother consents to a certain type of mental health therapy. It could even be said that Father now has the benefit of Mother's consent on the record. This "expansion," i.e. the Court's authorization of unilateral engagement of family therapy, is not a modification. Even if it was, the Court's modification is in Father's interest.

5

But perhaps Father is correct. Perhaps this Court's order did erroneously modify the Custody Order (though *C.A.J. v. D.S.M.*[3] seems to allow for some modifications outside of modification hearings). If this Court acted without authority, then Father would be prevented from enrolling the child in *any* mental health therapy. If in this latest appeal, Father means to appeal to the Superior Court for his right to take the child to individualized therapy, then he means to carry water in a sieve.

## B. Medical Records

In his second concise statement, Father does not allege that this Court erred, per se. Father is satisfied to just point out that the Court was superfluous in ordering that both parents shall have access the child's mental health records. Father cites to Paragraph 4(g) of the Custody Order to argue that the Court *already* granted both parents access to the child's records, notwithstanding the fact that the respective parents have their own respective decision-making domains. While Paragraph 4(g) specifies that both parents shall have access to the child's records, the types of records specified in Paragraph 4(g) are medical, dental, orthodontic and optical. The Custody Order is otherwise silent as to access to mental health records. And so the Court added language to the subject order authorizing both parents to have access to past and future mental health records. The Court nips in the bud that future skirmish.

## C. Best Interests

In his third concise statement, Father alleges this Court erred when it forbade Father from continuing the child's individualized therapy, as it is in the child's best interest to receive such treatment. Ironically, had this Court granted the relief Father mentions here, it would have erroneously modified the custody order without holding a proper proceeding. In his third concise statement, Father inadvertently admits to violating the Custody Order for over a year.

---

[3] 136 A.3d 504, 508 (Pa. Super. 2016).

6

## D. Bias and Incompetence

As this final section concerns this Court's alleged bias and incompetence, the Court can only cite *In re S.H.*, 879 A.2d 802, 808 (Pa.Super. 2005) and note that a mere adverse ruling, without more, does not demonstrate bias. But because Father took the trouble of fashioning a fourth concise statement, however prolix, this Court takes the time to address it.

Father's fourth concise statement is two parts: (a) and (b). Part (b) has two subsections: (b)(i) and (b)(ii). Section (a) is indecipherable. It reads: "The Mother addresses the request to the Court in a matter that deems it necessary due to the Father's non-compliance with the Custody Order of Court, which is untrue."

Father's statement 4(a) should be deemed waived. "When the trial court has to guess what issues an appellant is appealing, that is not enough for a meaningful review. [...] In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001). *See also C.W. v. N.D.* 2013 WL 11273054 (Pa. Super. 2013) (Non-precedential decision demonstrates the applicability of *Dowling* to family law cases.) This Court cannot meaningfully address what it cannot understand.

Likewise, the Court cannot reasonably speak to Father's statement 4(b)(ii). There, Father alleges that Mother's pleading included false and misleading statements. Little can be said on this point. Perhaps Father's point is that Mother knew Father was taking the child to individualized therapy throughout the last year. *See* T.T., at 8-9. Mother represented that she did not know. The point is actually moot. If Mother knew and consented, then Father was not afoul of Paragraph 4. Because mental health appointments are governed by Paragraph 4, Mother reserved the right to revoke her consent. And if Father refused to cease the appointments,

7

Mother still reserved the right to enforce Paragraph 4. What Father fails to understand is not every contrary representation by the opposing party is false and misleading. Each party sets forth allegations in a respective pleading. It is the nature of the adversarial process, upon which the legal system is based, that one party will not find historically accurate the version of events set forth by the other. It is the nature of this Court to take every allegation for what it is: an allegation, not gospel truth.

Left for last are Father's final points on this Court's "general bias and incompetence." According to Father, examples of this Court's bias are best exemplified by the "words the Court spoke to both parties" and by the Court's "refusal to speak" to Father's pleading. *See* Father's Concise Statement, at 4(b)(i).

By "words to both parties" Father means the Court's aforementioned phrase explaining its 2015 Custody Order to the parties: "I [the Court] tried to keep [the custody arrangement] as simple as possible, as clear-cut as possible." Father attaches to nearly every one of his motions the page of the March 24, 2015 transcript that includes this dialogue. *See, e.g.*, Father's Response to Petition and New Matter, dated December 21, 2016, docketed January 6, 2017, at Exhibit B. He quotes the phrase back to the Court by way of arguing that he is in the right, that Mother is in the wrong. *See* T.T., at 4-5. Despite its multiuse, the phrase has never convinced the Court to change its position before, and does not do so here. At the motion argument, Father argued that, despite Paragraph 4's language to the contrary, Father was permitted to "do what he thought was appropriate during his week," which apparently included unilaterally enrolling the child in individualized therapy. For authority, Father quotes the March 2015 transcript of the Court's explanation for its Custody Order. There, the Court was explaining to Father that limiting the need for co-parenting was in the child's best interests, that despite Father's

8

reservations about Mother's abilities, this Court was confident that each parent was perfectly capable of parenting the child during that parent's respective week, without the unnecessary interference of the non-custodial parent.

Still, this Court was fully aware that its seven-page Custody Order could not account for everything under the sun. That is why Paragraph 4 provides as a default shared legal custody for any issue unnamed in the ensuing list. It would have been inappropriate for this Court to assign a legal decision-maker to a *potential* issue, which may or may not ever occur. Father's use of the excerpt in this context is a gross misrepresentation, as Father surely knows for he usually employs the phrase to petition this Court to find Mother in contempt. Ironically, Mother did not seek to hold Father in contempt for his decision to unilaterally take the child to therapy for over a year, over Mother's explicit objection before the therapy even began, over this Court's explicit statement in the Custody Order that all other legal custody decisions must be shared.

Next, Father alleges this Court showed its bias and incompetence when it "refused to speak" to Father's responsive pleading. Father refers to a portion of dialogue between the Court and Father where Father accused the Court of not reading his pleading. *See* T.T., at 6-8. To better understand Father's position regarding legal custody, the Court posed to Father a hypothetical: Whether Father believed that Mother would have the legal authority to also act unilaterally even if she decided to, say, commit the child to a psychiatric institute. As Father never mentioned a psychiatric institute in his pleading, he apparently took this hypothetical to mean that the Court did not read his pleading. *Id.*, at 7-9. Later, when the Court asked Mother's counsel for a response to Father's points, she replied by citing to an exhibit attached to Mother's petition. *Id.*, at 11. Mother's reference to her exhibit apparently infuriated Father, as this Court instructed him to stop unnecessarily reading aloud all his pleading's exhibits, as they were

9

already attached to his exhibit and thus in the record. *Id.*, at 6-7. Despite repeated warnings and reminders that the proceeding was a motion's argument and not a hearing, Father would not stop interrupting Mother's counsel and demanded the Court to answer whether it read the pleadings. *Id.*, at 11-13. Father was so disorderly that Court had to discontinue the argument for the second consecutive time for the second consecutive reason. At this point in the proceeding, it became clear that Father abandoned his desire to make constructive legal argument, deciding instead to be disruptive in Court and harangue Mother's attorney. *Id.*, at 8; 8-13

## III.  CONCLUSION

In prohibiting Father from scheduling future individualized therapy appointments, this Court merely enforced – as opposed to modified – the legal custody provision of the parties' Custody Order. As Father's violation of the order caused Mother to incur a $100 copay, this Court properly ordered Father to reimburse Mother. It was not superfluous of this Court to order that the child's mental health records shall also be accessible by both parties. In fashioning the orders of December 21, 2016, the Court did not display bias. Its orders should be affirmed.

BY THE COURT:

_____ J.

10